# MUTUAL BENEFIT HEALTH AND ACCIDENT ASSOCIATION v. KELSO KING.—396 S.W.(2d) 94.

Eastern Section. July 27, 1965.

Certiorari Denied by Supreme Court October 18, 1965.

Simmonds, Bowman & Herndon, Johnson City, for plaintiff in error, Mutual Benefit Health and Accident Association.

W. E. Bowman, Kyle K. King, Greeneville, for defendant in error, Kelso King.

COOPER, J. Plaintiff, Kelso King, brought this suit in the Court of General Sessions of Greene County to recover the indemnity for "confining illness" under a health and accident policy issued to him by the defendant, Mutual Benefit Health and Accident Association. The defendant denied liability, contending that plaintiff's illness was "nonconfining" and that plaintiff had been paid all benefits due under the policy for such illness. After trial, judgment was entered for the plaintiff.

On appeal to the Circuit Court, the jury found "the plaintiff was toally disabled and confined within the meaning of the policy" for the period of March 19, 1962 to May 6, 1964, the date suit was filed. The trial court then entered judgment for $1091.67, representing a total award of $1278.33 less $186.66 paid by defendant for non-confining total loss of time.

The policy of insurance issued by the defendant provides for payment of benefits at the rate of $50.00 per month during the time the plaintiff is unable to perform "any of his occupational duties, [and] receives no pay for performing work or service of any kind," limited to a period of three months for "non-confining" sickness, and for life for "continuous total loss of time while there is continuous confinement."

The policy specifies that "the term, 'confinement' * * * [is] that period of time during which sickness requires the Insured's remaining within doors and receiving regular attendance therein by a legally qualified physician, other than himself. Confinement shall not be considered terminated by reason of transportation of the Insured for necessary treatment at the doctor's office or hospital."

Defendant concedes that there is material evidence from which a jury reasonably could find that plaintiff was unable to perform any of his occupational duties during the period of time that is the subject of this suit, but insists that the undisputed evidence shows that plaintiff's illness did not require him to remain within doors as required by the policy provisions; and, consequently, the trial court erred in failing to direct a verdict for the defendant.

Plaintiff's position is that the "house confinement" provision in the policy "is complied with by showing that the defendant is totally disabled and under a doctor's care and spends most of his time in and around the house."

Courts have not been unanimous in their approach to the construction and/or application of "house confinement" clauses in health and accident policies. See anno. 29 A.L.R.(2d) 1408 et seq. In a considerable number of cases, the courts have held that the "house confinement" clauses must be given their plain and natural meaning and have denied recovery where the insured leaves his house for any purpose, with the possible -exception of emergencies beyond his control. See 29 A.L.R.(2d) 1413, and cases there cited.

The majority of courts, however, have expressly or impliedly rejected the literal construction doctrine, and have construed the "house confinement" provisions liberally in favor of the insured, permitting recovery where the insured has left his home to visit his physician for treatment, or gone out on physician's advice for fresh air or sunshine or exercise, or gone to a hospital or to a different climate for his treatment, or has gone out occasionally for other purposes, provided he is entirely incapacitated for work or business on account of his illness. See Brandt v. Mutual Ben. Health & Acc. Ass'n, 30 Tenn.App. 14, 202 S.W.(2d) 827, and cases cited on page 829. See also cases listed in 29 A.L.R.(2d) 1415-1418.

"Decisions in this State are in line with this liberal view, and this Court is committed to the rule of a liberal construction of such provisions in favor of the insured. National Life & Accident Ins. Co. v. Armstrong, 21 Tenn. App. 92, 105 S.W.(2d)520; Interstate Life & Accident Co. v. Spurlock, 16 Tenn.App. 250, 64 S.W.(2d) 75; Wilkes v. National Life & Accident Ins. Co., 7 Tenn.App. 36; National Life & Accident Ins. Co. v. Bradley, 6 Tenn.Civ.App. 566." Brandt v. Mutual Ben. Health & Acc. Ass'n, 30 Tenn.App. 14, 202 S.W.(2d) 827. And recovery will be permitted where the evidence shows that the insured is totally disabled and substantially confined continuously within doors. Brandt v. Mutual Ben. Health & Acc. Ass'n, supra; Wilkes v. National Life & Accident Ins. Co., 7 Tenn.App. 36.

This rule of a liberal construction in favor of the insured is followed even though the policy distinguishes between a "confining" and a "nonconfining" illness and provides different rates of payment.

"Both * * * provisions can, and should be liberally construed in favor of the insured, and the one applied which more nearly fits the facts of the particular case. Where the insured has been totally disabled and substantially confined, that provision should be applied; where he has not been so confined, the other provision should be applied." Brandt v. Mutual Ben. Health & Acc. Ass'n, 30 Tenn.App. 14, 202 S.W.(2d) 827, 831.

In the present case, the record shows that plaintiff was first hospitalized in 1962 for hypertension Though responding to treatment, the condition proved to be permanent, requiring the plaintiff to continue under the care of a physician and to take drugs to keep his blood pressure within normal limits. This condition also prevented the plaintiff from doing the work normally required to conducting his farming operation.

In May 1962, plaintiff complained of pain in the chest, which was diagnosed as precardial, or angina, pain. Plaintiff testified that whenever he exerts himself physically, he has onsets of this chest pain.

Plaintiff was hospitalized from July 27 to August 3rd, 1962 for a suspected ruptured invertebral disc.

In January 1964, plaintiff again was hospitalized, and was found to be a diabetic. Since discharge, plaintiff has been able to control his diabetic condition by regular shots of insulin.

Plaintiff filed claims for all periods of hospitalization, and convalescence attendant thereto, under the "nonconfining sickness" clause of the policy of insurance. These claims were paid until the three month limitation was reached. Payment of the final claim, dated February 18, 1964 and based on the January hospitalization, was

refused and this suit, wherein recovery is sought under the "confining sickness" clause for the entire period of disability, resulted.

Dr. Robert Bottomley, the treating physician, testified that at the time of the trial, plaintiff was suffering from hypertension, diabetes and a peptic ulcer, and was unable "to do manual labor, the type of work he [the plaintiff] is accustomed to doing." The record also contains a report from Dr. Bottomley that, in his opinion, the plaintiff had been totally unable to perform any gainful labor after the onset of hypertension in 1962.

On the question of confinement, Dr. Bottomley testified that he had not ordered plaintiff to stay at home, and that, except for manual labor, plaintiff could get out and do pretty much as he pleased. Some things plaintiff can do in his physical condition are shown by the following excerpt from Dr. Bottomley's testimony:

Tr. 12

"XQ. Now, Doctor, you state that he is totally disabled as far as manual labor.

"A. Manual labor that he is accustomed to doing, yes sir.

"XQ. But he can get out of the house?

"A. He can.

"XQ. He can drive his car?

"A. Yes

\* \* \* \* \* \*

"XQ. He could go out over his farm \* \* \* to look at the fields?

"A. To a limited degree, walking, and so forth, like that is limited with hypertension.

"XQ. But he could do it daily?

"A. Yes sir.

"XQ. And he could come to the cattle market and either buy or sell cattle, as long as he didn't overdo it?

"A. That's right.

"XQ. And if he decided to and wanted to be with his family and take a Sunday afternoon drive, or a short trip, he could do that?

"A. Yes sir.

"XQ. And he could supervise and assign tasks for people working for him, if he had any?

"A. That's right.

"XQ. And to that extent he is not confined to the house.

"A. No sir.

"XQ. He is just not able to do manual labor.

"A. Yes, he is unable to do manual work, that's right.

\* \* \* \* \* \*

"XQ. But then as far as being house confined, you haven't ordered him to stay at home, around the house?

"A. No sir.

"XQ. You allow him to get out and except for manual labor to do pretty much as he pleases.

"A. That's right."

Dr. Bottomley's office prepared the claim filed in February, 1964 by the plaintiff, and in answer to the question "on what date were you first confined to the house all day?", it was stated "not confined". This form was signed by the plaintiff.

Plaintiff testified that farming is all he is trained for or qualified to do, and that he has been physically unable to work on the farm since March, 1962, and has done nothing other than go to the field on one occasion to instruct the sharecropper in the use of machinery; that since March, 1962, he has spent most of his time in the house and out under the shade trees in the yard. Plaintiff further testified that from time to time he drove his automobile to town and to the grocery store, but that he did not lift the groceries. He also testified that he went to the stock pen to sell his cattle.

Both parties strenuously argue the effect of plaintiff's excursions away from home. We do not think this is the controlling issue, though plaintiff's ability to engage in activities away from home is of interest and has some effect on the ultimate issue—which is, as we see it, the nature, extent and effect of plaintiff's illness.

 Was there any material evidence that plaintiff's illness was so serious that it was in the nature of a confining illness, or one commonly regarded as such? See Brandt v. Mutual Benefit Health & Acc. Ass'n, 30 Tenn. App. 14, 202 S.W.(2d) 827, and other cases cited in 29 A.L.R.(2d) at page 1420. We think not. To the contrary, the evidence shows without dispute that plaintiff's sickness, while disabling if one is to engage in manual labor, is not such that requires confinement to the house, or restricts activity generally. The medical proof shows that confinement was never prescribed, and that plaintiff

can do anything in moderation, except manual labor. The decision to spend time in the house, and out under the shade trees in the yard, was that of the plaintiff, not of his physician, and was not necessitated by his illness. To permit recovery under these circumstances would be tantamount, in our opinion, to holding that a ''house confinement'' clause in a health and accident policy has the same meaning as total disability, i. e., if an individual is unable to perform all the substantial and material acts necessary to the prosecution of the occupation for which he is qualified, he is totally disabled—and, ergo, confined. In fact, this is the plaintiff's position as quoted above. We are unwilling to extend or liberalize our construction of the ''house confinement'' clause to cover plaintiff's case.

There being no material evidence that plaintiff is substantially confined to his home by his illness, we think the trial court erred in overruling the defendant's motion for a directed verdict. The judgment of the trial court is reversed, and, it appearing that plaintiff has been paid all benefits due under the non-confining clause of the policy, the cause is dismissed. Costs are adjudged against the plaintiff, Kelso King.

McAmis, P. J., and Parrott, J., concur.