SHIRTS *v.* PHŒNIX ACCIDENT & SICK BENEFIT ASS'N.

INSURANCE—SICK BENEFITS—INCAPACITY.

> Under a policy giving insured sick benefits if "wholly incapacitated from transacting any and every kind of work or business pertaining to his occupation, and as a result thereof entirely confined to the house or bed," he is not entitled to the benefits after he is out of the house and at his store, sitting around a couple of hours a day superintending his business.

Error to Oceana; Russell, J. Submitted November 17, 1903. (Docket No. 120.) Decided January 12, 1904.

*Assumpsit* by Loren A. Shirts against the Phœnix

Accident & Sick Benefit Association of Benton Harbor on a certificate of insurance. From a judgment for plaintiff, defendant brings error. Reversed.

*E. J. Adams*, for appellant.

*Hartwick & Skeels* and *A. E. Souter*, for appellee.

HOOKER, J. The plaintiff was a member of the defendant, a co-operative mutual benefit association; having made application for membership in February, 1898. On February 12, 1898, a certificate was issued to him. Soon after he became a member, he was attacked by the grippe, and received indemnity under the contract of membership, which included sick and accident benefits. On the 27th of November, 1901, he filed written proofs of loss arising from an injury to his eye. They show that he was taken sick October 8, 1901, and that it was "caused by a piece of steel, four weeks before, and that the doctor called it 'iritis,'" and that the "external visible marks were eyes swollen and bloodshot;" that he had "done no work nor chores since;" that he "quit work on account of his disability October 8th;" and that he was "wholly disabled from any work from October 8 to November 25, 1901." This was subscribed and sworn to on November 26, 1901. Some correspondence followed with regard to the time the plaintiff was actually confined to the house; defendant being apparently desirous of ascertaining when he first went out of the house after October 8th, and informing him that he was not entitled to benefits for any time when he was not so confined. The plaintiff was a little slow about giving this information, but finally, on December 11th, wrote:

"In regard to my claim for sickness under my policy, will say, in reply to yours of December 10th, that I was confined to the house from October 8th to November 26th, inclusive."

On receipt of this letter the defendant forwarded a

check for $25.33, indemnity for 19 days, and plaintiff accepted the check, indorsing it as follows:

"Policy No. 3,752. Received December 13th, 1901, of the Phœnix Accident & Sick Benefit Association, twenty-five and 33 / 100 dollars, same being settlement in full for all claims against said association for indemnity as stated within.

"L. A. SHIRTS."

It seems to be conceded that this check paid to November 10th; five days being deducted from the total, according to the terms of the policy.

On December 20, 1901, one A. E. Souter, an attorney, wrote defendant, on behalf of the plaintiff, that he would not accept pay for 19 days as final settlement of his claim, and that he would not wait very long before beginning suit to recover the balance. On December 23d defendant's cashier replied that its auditor was out of the office for a week, so that the writer could not answer him definitely, and added: "However, would call your attention to the conditions of Mr. Shirts' policy before you bring suit." Soon after, the plaintiff's claim was placed in the hands of Mr. Cady, a lawyer of Benton Harbor, who had several conferences with defendant's auditor, at one of which he handed him Exhibits I and J. These were affidavits of the plaintiff and his physician. They were executed January 25th and 27th, respectively; and they state, in substance, that on October 13, 1901, the plaintiff called Dr. Wilson, going to his office to save expense, and that after that he was confined to the house until November 26th, when he went to the doctor's office for medicine, and also to his shop, but did no work of any kind, and was not able to work, until during the first week in December. The uncontradicted testimony shows that defendant's auditor folded these papers, and was about to file them, when Cady demanded and received them on the promise that he would send copies, and the auditor did not read them. The copies were not received.

In April, Hartwick & Skeels, representing plaintiff, had

some correspondence with the defendant, which ended with the following letter from the defendant's auditor:

"April 19, 1902.

"HARTWICK & SKEELS,
"Hart, Mich.

"*Dear Sirs:* I am in receipt of yours of the 16th inst. *in re* L. A. Shirts, of Shelby, Mich., policy No. 3,752. In reply to the same will say that it would be almost impossible to furnish a copy of everything pertaining to this claim. We inclose herewith copy of the check sent Mr. Shirts on December 12th, 1901, and which you will note he cashed on December 13th. You will also note that it is receipted as settlement in full for his claim. You will also note that it was indorsed by a Mr. A. E. Souter. I am not acquainted with the latter gentleman, but I am of the opinion that he is a local attorney or justice of the peace in Shelby. This case was placed in the hands of attorney A. P. Cady, of Benton Harbor, who had several interviews with me. The last conversation we had was over the telephone, and at that time I informed him that we positively would not pay anything more on the claim, as it had been settled in full. There are some of the papers pertaining to this claim which Mr. Cady had in his possession and refused to return them over to us, although they were affidavits pertaining to the claim. I believe, after you have gone over this matter, you will decide that Mr. Shirts' claim has been fully settled.

"Thanking you for your consideration, I am,
"Yours truly,
"W. H. CHATFIELD, Auditor."

This action followed, resulting in a judgment for plaintiff for $61 and costs.

Counsel for defendant alleges the following errors:

1. In admitting testimony tending to show disability after November 26th.

2. Refusal to direct a verdict for the defendant upon the ground that plaintiff's application contained a false statement as to prior illness.

3. Refusal to direct a verdict for the defendant upon the ground that the question of the validity of the plaintiff's claim was not submitted to arbitration.

4. In permitting plaintiff to recover for time when he was not confined to his house.

5. Refusal to direct a verdict upon the ground that the action was not seasonably begun.

6. Admitting hearsay testimony that the company refused to arbitrate the case.

7. In refusing to award costs to the defendant instead of the plaintiff.

8. In denying a motion for new trial.

From the size of the verdict, it is apparent that the jury gave plaintiff sick benefits to December 27th, although the plaintiff's own testimony shows that he was out of his house on the 11th and 12th of November, at the store on the 13th, and that he sat around a couple of hours a day superintending his business until the 25th of November (*i. e.*, directing his wife what she should do and how she should do it), and from November 26th he went to the store every day and did some work.

It evident from the history of this case, as shown by the testimony, that, when the plaintiff received the check for 19 days' disability, he understood that he was not entitled to benefits after he left the house on November 11th, and that he subsequently learned of the holding of this court in the case of *Hoffman* v. *Home & Hospital Ass'n*, 128 Mich. 323 (87 N. W. 265, 54 L. R. A. 746), and that his subsequent action was inspired thereby. In that case it was held that one suffering from hemorrhage from the lungs, who was necessarily confined to his house the most of the time, but who went out in good faith, under the advice of his physician, for exercise, or to consult him, and who, under such advice, went to Chicago for medical treatment, and was clearly shown to be totally and continuously disabled from doing any work or business, was entitled to recover sick benefits, notwithstanding the fact that he left the house under the circumstances stated. There are some differences in the language of the policies, and, while we do not attempt to distinguish them here, this fact might justify a refusal to apply the doctrine of that case in the present instance; but, whether we should or not, the circumstances of this case are so different that

it does not fall within the rule there stated. The policy in this case provides:

"Forty dollars per month, or at that rate for any part of a month, after membership of sixty days, without delinquency, prior to the beginning of sickness, should the member become sick from any disease not caused by narcotics, intoxicants, excesses, or immoral actions on his part, and be wholly incapacitated from transacting any and every kind of work or business pertaining to his occupation, and as a result thereof be entirely confined to the house or bed, and under the charge of some regularly qualified and registered physician, after the first five days, for the time he is so confined to the house: *Provided*, the total length of time to be paid for during any one illness shall not exceed one year. But if the member is sick for thirty-five continuous days, he shall receive payment from date of sickness, without deduction for the first five days."

By the 12th or 13th of November, and continuously thereafter, this plaintiff was not "wholly incapacitated from transacting every kind of work or business pertaining to his occupation, and as a result thereof [*i. e.*, such sickness] entirely confined to the house or bed," etc. In the light of his own admissions, a verdict might properly have been directed for the defendant. It is unnecessary to discuss other questions.

The judgment is reversed, and no new trial ordered.

The other Justices concurred.