COOPER  *v.* PHŒNIX  ACCIDENT  &  SICK  BENEFIT  ASS'N.

1. INSURANCE—SICK BENEFIT—POLICY—CONDITIONS—RECOVERY.
   Where a sick benefit policy covers the period while the assured is "necessarily, entirely, and continuously" confined to the house, there can be no recovery for the time during which assured and his physician state he was not entirely confined, but went out for an airing under his physician's orders.

2. SAME—TIME TO SUE—LIMITATIONS—WAIVER.
   After an unqualified denial of liability on a sick benefit policy, an offer to pay a certain sum "for the sole purpose of avoiding litigation and the attendant expense thereof," and subsequent efforts on the part of assured's attorney to induce the company to pay more, do not constitute "negotiations" which will amount to a waiver of a provision in the policy that an action thereon must be brought within three months from the time the cause of action accrues.

Error to Kent; Perkins, J.  Submitted June 22, 1905. (Docket No. 53.)  Decided September 28, 1905.

Assumpsit by Thomas F. Cooper against the Phœnix Accident & Sick Benefit Association of Benton Harbor on a certificate of insurance.  There was judgment for plaintiff on a verdict directed by the court, and defendant brings error.  Reversed.

*E. J. Adams*, for appellant.

*McKnight & McAllister*, for appellee.

OSTRANDER, J.  Plaintiff sued upon a policy of insurance issued by defendant company.  With its plea the defendant set up various provisions and conditions of the policy sued upon, and upon them and upon evidence claimed to be undisputed based its defense to the action.  The condition relied upon is:

"Legal proceedings for recovery hereunder shall not

be brought until after three months from date of filing proofs at home office of the association, nor brought at all unless commenced within three months of the time when right of action may accrue."

Plaintiff claims this provision was waived and the time extended by negotiations for a settlement.   The provisions of the policy relied upon are the following:

"*Third.* In the sum of $35 per month [this refers to the indemnity provided to be paid], or at that rate for any proportionate part thereof, for the number of consecutive days after the first five days, that the assured is necessarily, entirely, and continuously confined to the house and subject to the calls of a registered physician in good standing. * * *

"*Fourth.* (*d*) Disability resulting from sunstroke, freezing, carbuncles, boils, felons, abscess, * * * is classified as illness, and covered only under clause third of this contract."

Such disability as plaintiff suffered resulted from a felon, and the declaration avers the right to recover under clause "third," above quoted.   The court directed a verdict for plaintiff for $80.85, and judgment was entered on the verdict.   This ruling of the court involved the determination that plaintiff had made a case entitling him to indemnity under clause "third" of the certificate, and also that the action was begun within three months after his right of action accrued.   For plaintiff in error it is contended that the record supports neither conclusion, and that either a verdict should have been directed for defendant or the questions submitted to the jury.

Plaintiff resides at Newaygo, and for three years before this case was tried in the circuit court had been foreman on the street and contractor.   He testified that about December 23, 1901, his finger began to trouble him, and on January 2, 1902, he consulted a physician, who pronounced that he had a felon and prescribed a poultice.   Later the finger was twice amputated, the second amputation taking place at the office of the physician.

"During all this space of time, from the time I first dis-

covered it, the 23d day of December, up to March 5th, I did not do any work whatever, and I was in the house most of the time, and only went out in going to the doctor's office, and out under his direction to take an airing."

On cross-examination he testified:

" I was in bed a couple of days. I think that was the second and third day after it was lanced. I remember testifying in the case partially tried before the justice at Newaygo that I was not confined to the house.

" Q. Why do you tell us now in this court that you were confined to the house?

"A. I don't think that I understood it that I was confined continuously to the house, for I don't think I swore, if I remember right, what I said, that I was confined continuously to the house.

" Q. You do mean to swear now, then, that you were confined continuously to the house, necessarily and continuously and entirely confined to the house?

"A. No, sir.

" Q. You were not, as a matter of fact, necessarily confined to the house, except when you would go in there for 20 minutes every two hours to dress it, were you?

"A. I was confined to the house, but I was out when it was necessary. The doctor said whenever I wanted anything done to it to come to the office, according to his orders.

" Q. Well, you went other places besides the doctor's office during the time you were nursing this felon?

"A. I went to the post office, and went to the drug store.

" Q. And went to the hotel, too, didn't you?

"A. Yes; I dropped into the hotel one day and saw Mr. Christian. I was not confined to the house all of the time. The biggest majority of the time I was there. Some of the days it was necessary for me to remain in the house between the times I was dressing my hand. I cannot tell what days. There was different times that I would stay in that I did not feel like getting out in the streets. I couldn't say how many days. There was from two to three days of different sessions. Some days I felt fairly well, except from pain. Then there were other days that I was so sick I did not feel like moving at all, except from pain, just tramp around the house."

Plaintiff sent a preliminary notice to the defendant

January 2, 1902, which states he has a felon, quit work December 25th, and gives the name of his physician, whose report accompanied it. This report contains the following questions and answers:

"15. Is he necessarily confined to his house? No.
"16. Is he confined to his bed? No."

The final proofs furnished by plaintiff in March, 1902, contain the following:

"6. On what date was it necessary for you to quit work on account of this disability? January 1. * * *
"8. On what date were you first out of the house? I was not confined to the house."

Plaintiff produced his physician as a witness, and his testimony is, after describing the ailment and its treatment:

"During all this time he was under my care, and I was subject to his call, and I saw him and treated and examined his hand almost every day, and during that time the man was unable to do any manual labor. He was not necessarily confined to the house during the continuance of it. I suggested to him the advisability of going out, if he felt disposed to. He suffered a great deal of pain, and was restless, sleepless, and I directed him to get out —get out and take an airing. That is what I mean by 'he was not confined.'"

The further testimony tends to prove that the case was a severe one, accompanied by elevation of temperature. On cross-examination witness testified: "I said that Mr. Cooper was not confined to the house necessarily." At the trial the agent of defendant was a witness, and he was asked:

"Q. Was he confined to the house?
"A. No; I guess not. I met him out on the street.
"The Court: Is there any necessity of going over that again? He was not confined to the house during his illness. That is conceded. Let us get at the real point. Nobody claims he was confined to the house.
"Mr. McKnight: That is, all the time. We do not claim he did not go out, just as we have stated."

141 MICH.—31.

To say as matter of law that this evidence is sufficient to entitle plaintiff to recover indemnity contracted to be paid in case he was necessarily, entirely, and continuously confined to the house, is to do violence to the law and the facts.    Such a ruling involves much more than the construction of the contract.    It is an interpretation of it which is inconsistent with its terms.    It would seem that, when defendant company had received from plaintiff, as part of his final proofs, an affidavit in which he stated, "I was not confined to the house," and when this statement was confirmed by that of his attending physician, who made no answer in the final proofs to the questions asked for information upon this subject, nothing remained to be done in the case, except to reject the claim.    Instead, we infer that, because of the interest and request of the local agent, it offered to pay plaintiff $25.    Counsel for plaintiff rely upon the decision of this court in *Hoffman* v. *Hospital Ass'n*, 128 Mich. 323 (54 L. R. A. 746). In that case the words of the contract were "continuously confined to the house."    The court submitted to the jury the question of liability, which, by the terms of the instruction given, involved a finding that plaintiff was continuously confined to the house on account of illness.    It is true that the jury were advised that it was not necessary that the plaintiff should remain in the house continuously during the entire time of disability, that to step out of doors now and then, or to occasionally go to the office of his physician, would not be a violation of this clause, and that the question was:

" Was the plaintiff sick, and with a disease covered by his policy, to the extent that he was totally disabled from prosecuting any business ?    And was he continuously confined to his house on account of such sickness, to the extent that he was necessarily and in good faith there the larger portion of his time, and only went forth either from necessity for consultation with or by direction of his physician, in whose charge and care he was ?"

In the clause now before us the words are " necessarily,

entirely, and continuously confined to the house." The contract is not one of indemnity for disability caused by a felon.   It is only when the resulting disability is of such nature that the holder of the policy is necessarily, entirely, and continuously confined to his house that indemnity is promised.   If the provision had been written expressly to meet and avoid the effect of the reasoning in the case referred to, it could not have well been made stronger.   See, also, *Shirts* v. *Benefit Ass'n*, 135 Mich. 439.

Plaintiff did not make a case entitling him to the verdict which was directed.   We do not, however, feel compelled to say that he is not entitled to recover for some of the time during which disability continued, and therefore shall send the case back for a new trial.   This determination requires us to consider whether the court below was in error in holding that the action was begun in proper time.   The defendant, in reply to the preliminary notice which plaintiff sent to it, wrote him a letter, dated January 7, 1902, denying any liability upon the express ground that he was not confined to the house, and referred him to clause "third" of his policy.   From this position the defendant is not shown to have moved.   The offer made by the attorney of defendant to the attorney for plaintiff, dated July 15, 1902, to pay $30, "for the sole purpose of avoiding litigation and attendant expenses thereof," and stating that, if plaintiff cared to accept that amount, a check would be sent, otherwise the claim would be contested, does not necessarily, if at all, indicate any change of position on the part of the company.   If there is question about it, the letter of defendant's attorney, dated July 18, 1902, answers the question.   A part of this letter is here given:

" In reply, beg to say it would hardly seem necessary for me again to repeat the conclusion arrived at by the [defendant] after due deliberation; but you evidently have failed to understand what I said, and therefore I again repeat it.   If [plaintiff] prefers to accept the offer of the company, made for the sole purpose of avoiding litigation,

the company will pay him $30. If he prefers litigation, we are perfectly willing that he should have it. We leave the matter entirely for him to decide.   *   *   *"

This offer, made in July, was attempted to be accepted by plaintiff in November. The defendant declined to pay. It cannot be said, we think, as matter of law, that defendant waived the provision requiring suit to be begun within three months after right of action accrued, or that the talks between attorneys after July 18, 1902, were *negotiations* calculated to prevent plaintiff from bringing an action. Unless there was something in the conduct of the company upon which plaintiff had the right to and did rely, which reasonably evidenced parley and the yielding of the position assumed, plaintiff cannot excuse postponement of his suit. The case is not, upon this record, ruled by *Voorheis* v. *Benefit Society*, 91 Mich. 469, 474. It is doubtful if there is any testimony from which a jury would have the right to find that there were "negotiations" between the parties in the proper meaning of that word. We resolve the doubt in favor of plaintiff.

Judgment is reversed, with costs, and a new trial granted.

McALVAY, BLAIR, MONTGOMERY, and HOOKER, JJ., concurred.