# GUARANTEE TRUST LIFE INSURANCE COMPANY, Appellant, v. CHARLIE PATTERSON, Appellee.—406 S.W.(2d) 338.

Middle Section. June 24, 1966.

Certiorari Denied by Supreme Court September 19, 1966.

302

William A. Moody, Nashville, for appellant.

Solon Fitzpatrick, Carthage, for appellee.

PURYEAR, J. This suit involves application of certain provisions of a sick and accident policy and we will refer to the parties as complainant and defendant as they appeared in the trial Court.

Defendant is a foreign corporation qualified to do business as an insurance company in the State of Tennessee. In consideration of an annual premium of $133.50 for the first year and $123.50 for each succeeding year, defendant issued to complainant a sick and accident policy which became effective on July 15, 1962.

Among other benefits, this policy provides for payment of a $100.00 monthly benefit for total disability, which disability provisions are set forth in parts J and K of the policy as follows:

*"PART J CONFINING DISABILITY BENEFITS FOR LIFE*

If the insured, because of such sickness, shall be continuously confined within doors and regularly attended therein by a legally qualified physician, other than himself, the Company will pay indemnity for one day or more (Benefits begin with the first medical treatment during disability) at the rate of the Monthly benefit thereafter so long as the Insured lives and suffers continuous confinement; provided such sickness causes continuous total disability and total loss of time."

*"PART K NONCONFINING DISABILITY BENEFITS*

If the insured, because of such sickness, shall not be continuously confined within doors but shall be under the professional care and regular attendance of a legally qualified physician, other than himself, the Company will pay indemnity for one day or more (benefits begin with the first medical treatment during disability) at the rate of the Regular Monthly Benefit during the period of disability, but not to exceed two months for any one sickness; provided such sickness causes continuous total disability and total loss of time."

(B. of E. p. 25; Ex. #1 to original bill)

On January 18, 1964, the complainant, Charlie Patterson, 64 years of age, had an attack of congestive heart failure, at which time his family physician, Doctor F. T. Rutherford, Jr., attended him. It is admitted by defendant that the above mentioned policy of insurance was in force at the time of the onset of complainant's illness.

After examining and treating complainant for several days, Doctor Rutherford sent him to Nashville to be treated by Doctor Frederic Cowden, a heart specialist.

Doctor Cowden examined complainant on January 30, 1964, as a result of which examination he diagnosed complainant's condition as follows:

'Hypertensive and arteriosclerotic heart disease with history of congestive heart failure; two, aortic valvular disease with aortic stenosis and aortic insufficiency; three, benign prostatic hypertrophy; and four, Parkinsonism.''

(Tr. p. 44)

Complainant continued to remain under the care of Doctor Cowden for several months and his condition was finally diagnosed by that physician to be as follows:

'' 'It's my opinion that Mr. Patterson is totally and permanently disabled due to organic heart disease, and while he is fairly well compensated on a medical program of salt-restrictions, digitalis, dieuretics, and limited activities, I do not feel that he is capable of any significant work. His previous employment has been in farming and carpentry work, and I do not feel that he is capable of any productive activity in either of these fields.' ''

(Tr. pp. 47-48)

The diagnosis of Doctor Cowden is not disputed by defendant and, in fact, defendant concedes that complainant is totally and permanently disabled.

Complainant contends that he is totally and permanently disabled as a result of his illness and substantially confined within doors so as to place him within the provisions of Part J of the insurance policy and that he is entitled to collect from the defendant insurance company the sum of $100.00 per month from January 18, 1964.

Defendant contends that, as a result of complainant's illness, he is not continuously confined within doors and therefore, the only disability benefit to which he is entitled is $100.00 per month for two months under Part K of the policy, for which he has been paid. However, defendant admits complainant is entitled to recover some hospital benefits under other provisions of the policy. Therefore, defendant paid complainant $200.00 benefits under Part K of the policy and $50.00 for some benefits under another provision of the policy, thus making total payments of $250.00.

On January 26, 1965, this suit was instituted by complainant filing his bill in Chancery by which he sought to recover benefits of $100.00 per month from January 18, 1964, to the date of filing of the bill, less the $200.00 previously paid under Part K of the policy, and also to recover the additional sum of $16.65 hospital benefits due under another provision of the policy.

To this bill, defendant filed its answer, expressly denying that complainant was, by reason of his illness, continuously confined within doors and, therefore, denying liability under Part J of the insurance policy.

On October 20, 1965, complainant filed a supplemental bill seeking recovery of the $100.00 monthly benefits under Part J of the policy up until the date of the filing of such supplemental bill.

Complainant demanded a trial of the issues by jury, which demand was allowed by the Court and the case was tried with the following issue of fact being submitted to the jury:

"Has the complainant, Charlie Patterson, been substantially continuously confined within doors as a result of his sickness?"

306

(Tr. p. 28)

The case was tried upon oral and documentary evidence, with the exception of the testimony of Doctor Cowden, which was by deposition, and after being instructed by the Chancellor, the jury answered "yes" upon the issues submitted to them. (Tr. p. 28)

Upon this verdict of the jury, the Chancellor rendered a decree in which he ordered, adjudged and decree as follows:

"And thereupon, the cause coming on to be further and finally heard this day, upon the pleadings, evidence and the said finding of the jury, on consideration thereof, it is ordered, adjudged and decreed by the Court that the Complainant is totally and permanently disabled and substantially continuously confined within doors and visited or attended regularly by a legally qualified physician other than himself, and that he has been so totally disabled since the 18th day of January, 1964, and that he is entitled to recover from the defendants at the rate of One Hundred ($100.00) Per month since said date under Part J of said policy to this date less the Two Hundred Fifty ($250.00) Dollars paid by the defendant to the Complainant, making the amount due the complainant to date after said credit to be Eighteen Hundred Fifty-Six Dollars and Sixty-Six Cents ($1,856.66); the Court further finds that the defendant owes the complainant for the last five days in the hospital in February, 1964, under Part L of said policy or Sixteen Dollars and Sixty-Five Cents ($16.65), making a total defendant owes the complainant to date the sum of Eighteen Hundred Seventy-Three Dollars and Thirty-One Cents ($1,873.31) and costs.

It is therefore, ordered adjudged and decreed by the Court in accordance of (sic) the verdict of the jury and the finding of the Court that the complainant have and recover from the defendant the total sum of Eighteen Hundred Seventy-Three Dollars and Thirty-One Cents ($1,873.31) and costs for which let execution issue.''

(Tr. pp. 28-30)

Within the proper time defendant filed a motion for new trial which was heard by the Chancellor on November 22, 1965, which motion was overruled by the following decree of the Chancellor:

## "ORDER OVERRULING MOTION FOR NEW TRIAL.

This cause came on to be further heard by agreement of all parties on this the 22nd day of November, 1965, before the Hon. Scott Camp, Chancellor, upon the defendant's motion for a new trial heretofore filed in this cause, and after hearing argument of counsel and due consideration thereof the Court is of the opinion that said motion should be overruled and disallowed.

The Court found that independently of the jury's verdict, the insured was substantially confined within doors within the meaning of the contract so as to entitle the Complainant to maximum benefits under said contract.

It is, therefore, ordered, adjudged and decreed by the Court that the defendant's motion for a new trial be and the same is hereby overruled and disallowed. To which action of the Court the defendant excepted, prayed and is granted an appeal in error to the Court

of Appeals, sitting in Nashville, Tennessee, and it is allowed thirty (30) days from this date to file an appeal bond and sixty (60) days from this date to file its bill of exceptions.

The Clerk & Master at Carthage, Tennessee, will enter this decree on his Chambers Minutes and preserve as provided by law.

Done at Chambers in Smithville, Tennessee, on this the 22nd day of Nov., 1965.

/s/ Scott Camp

Chancellor.''

(Tr. pp. 33-34)

From the foregoing decree of the Chancellor, defendant has perfected its appeal in error to this Court and filed eight assignments of error.

The facts of the case are undisputed and in addition to those stated at the outset of this opinion, it is undisputed that complainant is permanently and totally disabled; that his physician, Doctor Rutherford, has advised him to go out of doors, at times, in order to get some fresh air and exercise, Doctor Rutherford's reason for such advice being stated in his testimony as follows:

''Q. Have you advised him to take some exercise?

A. Yes, with this type trouble, it's better not to make a bed patient out of them.

Q. Now, explain to the Court and Jury why you don't make a bed patient out of him?

A. Some people, who have worked hard all their life, and put them in the bed for something like this and

they wouldn't live for a week. Actually, others you would have to put in bed because they just couldn't do anything other than that.

Q. It is your—is that part of your treatment of him, to advise him—to advise him to take mild exercises—is that part of your treatment for him?

A. Yes, I would say so.

Q. What is that to do for him—to take mild exercise?

A. Well, it's much better than giving them nerve medicine which would have to do, if you made him stay in all the time, and anytime you can get away with keeping from giving them something for nerves, they'll do better generally.

Q. In other words, that's a substitute for medicine?

A. Yes, sir, if you put it that way."

(B. of E. p. 18)

When complainant stays indoors too long, he gets nervous and begins to tremble and this condition is relieved by a moderate amount of walking around his yard, but he is compelled to walk slowly and after taking such mild exercise his heart flutters and he is compelled to go back indoors and rest.

Complainant also drives his car to church about once a month and occasionally feeds his chickens, washes dishes and drives his car to a store to get groceries, but this is the full extent of his physical activity and it is undisputed that he can do absolutely no farm work or carpentry work or other productive work of any kind.

In answer to a question about his capacity to work, complainant testified as follows:

"Q. How about little odd jobs that need to be done around the house—just you and your wife there—you help out with those I imagine?

A. No, they just have to go undone.

Q. Sir?

A. They just have to go undone—what she can't do."

(B. of E. pp. 13-14)

This is supported by the following testimony of Doctor Rutherford:

"Q. Then he is now, at this point, restricted from engaging in labor of any sort?

A. Yes Sir.

Q. That's a good statement?

A. Yes Sir.

Q. But he is not restricted from leading an almost normal mild life?

A. No, I couldn't agree with that, Sir."

(B. of E. pp. 23-24)

Thus, the undisputed facts of this case show that the status of complainant's health has been reduced to that of an invalid and the only purpose for which he ventures outdoors is to obtain the therapeutic value of some mild non-productive activity recommended by his physician.

The first matter which is called to our attention in this case is a motion by complainant to affirm the judgment of the lower Court because defendant did not file its assignments of error within twenty-five days as required by Rule 11 of this Court, and did not file its brief state-

ment of the case as required by Rule 11(1) of this Court. Since we are of the opinion that the decree of the Chancellor must be affirmed upon the merits of the case, it is not necessary for us to make any disposition of this motion.

In assignments of error numbered two and three, defendant contends the Chancellor erred in submitting an issue of fact to the jury and also erred in his instructions to the jury.

We agree that since the facts of the case are undisputed in favor of complainant's right to recover, the issue should not have been submitted to a jury.

However, in view of the Chancellor's finding, independently of the jury's verdict, that complainant was substantially confined within doors within the meaning of the contract of insurance, so as to entitle him to benefits of $100.00 per month under Part J thereof, the questions raised by assignments of error numbered two and three are no longer relevant and, therefore, we overrule those two assignments, and review the case de novo as if it had been tried and determined by the Chancellor without the intervention of a jury.

In all remaining assignments of error, defendant contends the Chancellor erred in giving judgment for complainant because the decree is contrary to the law and the evidence of the case.

As observed by Judge Cooper in Mutual Benefit Health and Accident Association v. King, 55 Tenn.App. 72, 396 S.W.2d 94:

"Courts have not been unanimous in their approach to the construction and/or application of 'house confinement clauses' ".

This diversity of approach to the question was also noted by Judge Felts in Brandt v. Mutual Benefit Health & Accident Ass'n, 30 Tenn.App. 14, 202 S.W.2d 827, in which opinion there is an excellent discussion by Judge Felts of the conflicting cases on the subject.

In the King case, supra, the Eastern Section of this Court held there was no material evidence that plaintiff was substantially confined to his home by his illness and denied recovery under the house confinement clause. However, there is an important distinction between the King case and the instant case. In the King case the evidence showed that confinement was not prescribed, that plaintiff could do anything within moderation, except manual labor; that he could go out on his farm to instruct his sharecroppers in the use of machinery; that he went to the stock pen to sell his cattle, none of which facts fit the instant case, as shown by our statement herein of the undisputed facts.

We think the instant case is controlled by the Brandt case, supra, wherein the evidence showed that, in good weather, the insured took short walks on his doctor's advice and went to town on a bus a number of times. In the Brandt case, the Middle Section of this Court held that the insured was totally disabled and substantially confined continuously within doors and the fact that he went out to the extent stated for purposes of his treatment did not break the continuity of his confinement.

In National Life & Accident Ins. Co. v. Armstrong, 21 Tenn.App. 92, 105 S.W.2d 520, Judge McAmis pointed out that the primary purpose of this form of insurance is to provide indemnity against illness which prevents insured from earning anything from his regular employment during the period of such illness, and that the pur-

pose of the confinement provision is subordinate and more or less evidentiary, being intended more as a protection against malingerers than as a condition precedent to the right of recovery.

In the instant case, since the complainant's permanent and total disability is admitted, and his brief exits from his house only serving the purpose of relieving tension, the evidentiary value of the extent of house confinement becomes unimportant.

■ For all practical purposes, except those which are therapeutic in value, the complainant is substantially confined continuously within doors and regularly attended by a legally qualified physician and, therefore, we think the decree of the Chancellor awarding complainant recovery under Part J of the policy is correct.

The cases of Wallace v. State Farm Mut. Automobile Ins. Co., 187 Tenn. 692, 216 S.W.2d 697, Seal v. Georgia Life Ins. Co., 132 Tenn. 673, 179 S.W. 312, and Pacific Mutual Ins. Co. v. Galbraith, 115 Tenn. 471, 91 S.W. 204, cited by defendant are not in point, since those cases deal with methods of construing policies where ambiguity of meaning exists, whereas no ambiguity exists in the applicable policy provisions in the instant case, the controlling question herein being the substantial effect of complainant's illness.

All of the assignments of error are overruled and the decree of the Chancellor is affirmed with costs.

Shriver and Humphreys, JJ., concur.