## OCCIDENTAL LIFE INSURANCE COMPANY OF CALIFORNIA *v.* JULES VERVACK

5-4593                                    429 S. W. 2d 116

Opinion delivered June 3, 1968
[Rehearing denied July 15, 1968.]

*Dobbs, Pryor & Shaver,* for appellant.

*Warner, Warner, Ragon & Smith,* for appellee.

CONLEY BYRD, Justice. Occidental Life Insurance Company of California appeals from a verdict upon its disability policy in favor of appellee Jules Vervack. The points relied upon for reversal are:

I. The plaintiff failed to establish total disability in that his doctor never said that he was totally disabled, only that he could not work full time, and the plaintiff simply concluded that he was unemployable on less than full time without supporting facts or basis of any kind.

II. Plaintiff elected to act contrary to doctor's advice that he could return to work part time, could bowl, fish, hunt, and generally carry on usual activities, refraining from strenuous work or emotional upset, and was not necessarily confined within the meaning of the policy.

III. Instruction No. 6 told the jury that certain events would not prevent a recovery, and authorized the jury to find for plaintiff, without requiring the jury to find either total disability or confinement.

IV.   The court erred in giving Instruction No. 5A.

The record shows that Occidental had issued to Vervack its disability policy containing both a TOTAL DISABILITY AND NON-CONFINEMENT clause and a TOTAL DISABILITY AND CONFINEMENT clause. The non-confinement clause, referred to as section A, provides:

"A.   If such sickness shall wholly, necessarily and continuously disable and prevent the Insured from performing each and every duty pertaining to his occupation, the Company shall continue to pay the monthly sickness indemnity for a period, not exceeding twelve consecutive months, the Insured shall be so disabled and necessarily under the regular care and attendance of a legally qualified physician or surgeon other than himself. No indemnity shall be payable under this Part for the first seven days of any period of disability."

The total disability and confinement clause, section B in the policy, provides:

"B.   If such sickness shall continue beyond the period of twelve consecutive months specified in Section A of this Part and shall wholly, necessarily and continuously disable and prevent the Insured from performing each and every duty pertaining to his occupation, the Company shall continue to pay the monthly sickness indemnity for the period the Insured shall live and be so disabled and necessarily and continuously confined within the house and therein regularly visited and attended by a legally qualified physician or surgeon other than himself."

Vervack's first heart attack occurred on April 23, 1965. Following this he operated his taxicab until a second heart attack on November 12, 1965. Occidental paid the benefits under the TOTAL DISABILITY AND NON-CONFINEMENT clause but refused to make payments on the TOTAL DISABILITY AND CONFINE-

MENT clause because it denied that Vervack was "so disabled and necessarily and continuously confined within the house and therein regularly visited and attended by a legally qualified physician or surgeon other than himself."

## I and II

Dr. Robert J. Thompson testified that Mr. Vervack had arteriosclerotic heart disease, a hardening of the arteries with coronary insufficiency, which meant that his coronary arteries were incapable of carrying an adequate amount of blood to the heart muscle to allow him to do what would be considered normal physical activity. He stated that Vervack had a serious form of heart disease and it was necessary that he see a doctor once a month for the rest of his life. Vervack also was going to the hospital every three weeks to have the clotting ability of his blood tested. When questioned about activities or exercises recommended, the doctor stated:

"A. Yes, we have recommended—this has to be more or less on a trial and error basis because there is no way of knowing from an original injury or heart attack how much exercise an individual will tolerate following a heart attack, so we have recommended that they take exercise or Mr. Vervack take exercise up to the point of tolerance, that is, to where he does not have pain. We feel that walks, up to the point of tolerance, are quite important as far as therapy for this type heart disease."

After pointing out that the patient determines the tolerance, Dr. Thompson stated that he did not believe Mr. Vervack's failure to work indicated any type of malingering. His reason was the precipitation of episodes of angina with such things as emotional upsets, taking a shower, etc.

Jules Vervack stated that he had attacks of angina if he stayed out of bed too long, that he could not stay up over three or four hours without chest pains, that if

he walked too far he would develop angina pains and have to stop and rest, that he got short of breath quickly and that he could not work ten minutes without having to quit. He tested his exertion tolerance in his walks and in playing around the yard with the dogs, and found that he had to go sit down in ten or fifteen minutes. He had been driving his car for the last ten or twelve months to the doctor's office, on his wife's errands to the beauty shop and things of that nature, but when he went shopping with his wife he avoided any exertion such as pushing a loaded basket or reaching up and getting groceries off the shelf. He went to three high school football games in 1966 and two in 1967, and sometimes to the movies.

Mrs. Vervack testified that her husband's angina attacks were very frequent, and that they were sometimes brought on by activities and other times occurred during his sleep. She stated that he sometimes got very weak in the shower and that they used a lawn chair in the shower so he could sit down and bathe.

We conclude that there was sufficient evidence to submit to the jury the question of Mr. Vervack's total disability and confinement within the meaning of the policy.

Appellant argues that Vervack acted contrary to the doctor's advice in failing to work, bowl, hunt or fish. However, as we understand the doctor's testimony, the question relative to the patient's tolerance was a fact issue.

### III

Instruction No. 6 of which appellant complains reads as follows:

"Under the law, 'continuously confined within the house' as contained in this policy does not mean literally that the plaintiff must remain continuously in his house in order to recover.

"You are instructed that if you find from a preponderance of the evidence and all of the instructions of the court that the plaintiff, Jules Vervack, was advised by a reputable physician or physicians, that it was to the best interest of his health, both mental and physical, and particularly to the best interest of the treatment of the disease from which he suffered, that he take a reasonable amount of exercise, subject himself to fresh air and sunshine, and engage in non-strenuous activities on a limited and reasonable basis, and you further find that he did take exercises and engage in activities in reliance on the advice of his physician or physicians, then the court tells you that even though he may have occasionally performed said events, these events would not prevent you from finding that the plaintiff was totally disabled, necessarily and continuously confined within the house and therein regularly visited and attended by a legally qualified physician or surgeon other than himself, *and your verdict may be for the plaintiff.*" (Emphasis supplied.)

We do not agree with appellant that this instruction is inherently erroneous. The same, or a similar, instruction has been given and approved in *Mutual Benefit Health & Accident Ass'n.* v. *Murphy,* 209 Ark. 945, 193 S. W. 2d 305 (1946), and *Mutual Benefit Health & Accident Ass'n* v. *Rowell,* 236 Ark. 771, 368 S. W. 2d 272 (1963). We are therefore unwilling to say that the trial court erred in giving this instruction under the issues of this case. Appellant's argument that the instruction amounts to a comment on the evidence, while not persuasive enough to reverse our prior cases, leads us to suggest that in the future the italicized portion thereof be omitted.

When the instructions are read as a whole, we think the issues relative to total disability and confinement within the terms of the policy were adequately submitted to the jury.

## IV

The Instruction No. 5A of which appellant complains reads:

"Under the law 'regularly visited therein (within the House) and attended by a legally qualified physician or surgeon other than himself' as contained in this policy does not mean literally that the doctor must visit or attend the plaintiff at his house, but only that he be under regular treatment at whatever place the doctor directs."

We find no error in this instruction. Appellant readily concedes that it was given and approved in *Colorado Life Co.* v. *Steele,* 101 F. 2d 448 (8th Cir. 1939). The text writers are in general agreement. See 15 Couch, Insurance, § 53:158 (2d ed. 1966).

This is a liberal interpretation of the house confinement clause in appellant's policy, but in this we are not alone. According to the annotation in 29 A. L. R. 2d 1408, the great majority of the courts follow the construction here given.

Affirmed.