CROWELL v FEDERAL LIFE & CASUALTY COMPANY

Docket No. 57196. Submitted June 8, 1976 (Calendar No. 4).—Decided November 23, 1976.

Gerald Crowell brought a complaint against Federal Life and Casualty Company on an insurance policy for payment of disability benefits for a confining sickness. The Muskegon Circuit Court, John H. Piercey, J., entered a judgment for defendant. The plaintiff had suffered a heart attack in 1969, and the trial court found that he was totally disabled, but was not confined to his premises under the terms of the policy because he was able to leave his home for shopping trips or walks around the neighborhood as long as he avoided stressful situations. The Court of Appeals, D. E. Holbrook, P. J., and Bronson and M. J. Kelly, JJ., reversed (Docket No. 20070). Defendant appeals. *Held:*

1. A "house confinement" clause in an insurance policy is not violated where the insured occasionally departs from his house for the purpose of getting fresh air and exercise, in a bona fide attempt to improve his health, or where he visits his physician's office or a hospital for examination and treatment. The clause describes the nature and extent of the insured's illness or disability, and does not prescribe limitations on the conduct of the insured unless he is able to and does leave his home for primarily business or other personal reasons.

2. The principal purpose for which one insures against sickness and accident is to provide indemnity for the period of inability to engage in gainful employment. Construction of policy language which would defeat a reasonable expectation of coverage is not favored.

3. The fact that the plaintiff engages in walks prescribed for therapeutic value outside the confines of his yard should not disqualify him from benefits. Medical testimony that the plain-

REFERENCES FOR POINTS IN HEADNOTES

[1, 2, 6, 7] 44 Am Jur 2d, Insurance § 2068.
[3, 6] 43 Am Jur 2d, Insurance § 274.
[4] 31 Am Jur 2d, Expert and Opinion Evidence § 103.
  44 Am Jur 2d, Insurance § 2027.
[5] 4 Am Jur 2d, Appeal and Error § 76.

tiff was essentially free to come and go as he pleased is not determinative of the issue, where a fair reading of the testimony is that the plaintiff could engage in activity if he felt able to do so, and that he should desist if he experienced fatigue or angina, which is consistent with modern medical treatment of such heart cases.

Affirmed.

Justice Lindemer, joined by Justices Coleman and Ryan. dissented. He would hold that the record does not establish that the decision of the trial court was clearly erroneous. Plaintiff is disqualified for payments because he engaged in activities not permitted under the term "confining sickness" as defined in the insurance contract. The "substantial confinement doctrine" is applicable to situations involving strict confinement clauses which would completely deny recovery. A "house confinement" clause should be interpreted to allow the insured to step out of doors now and then, or to occasionally go to the office of his physician. But the confinement clause in the policy in suit permits the plaintiff to make unlimited use of his yard and to make necessary visits to health facilities, and paid benefits for 24 months without regard to confinement. Most of the plaintiff's daily activities outside his home blended the conduct of his personal business with incidental therapeutic benefits from his activities, but the incidental benefits cannot justify the otherwise personal nature of the activities which the plaintiff could carry on nearly routinely.

61 Mich App 377; 232 NW2d 710 (1975) affirmed.

OPINION OF THE COURT

1. INSURANCE—HEALTH INSURANCE—CONFINING SICKNESS—HOUSE CONFINEMENT.

An insured is not disqualified for payments under a policy of health insurance which provides for payment if the insured's illness confines him to his premises where he occasionally departs from his house for the purpose of getting fresh air and exercise, in a bona fide attempt to improve his health, or where he visits his physician's office or a hospital for examination and treatment.

2. INSURANCE—HEALTH INSURANCE—CONFINING SICKNESS—HOUSE CONFINEMENT.

A clause in a health insurance policy which provides for payment if the insured's illness confines him to his premises describes the nature and extent of the insured's illness or disability, and does not prescribe limitations on the conduct of the insured

unless he is able to and does leave his home for primarily business or other personal reasons.

3. INSURANCE—HEALTH INSURANCE—CONSTRUCTION OF POLICY.

The principal purpose for which one insures against sickness and accident is to provide indemnity for the period of inability to engage in gainful employment; construction of health insurance policy language which would defeat a reasonable expectation of coverage is not favored.

4. INSURANCE—HEALTH INSURANCE—CONFINING SICKNESS—HOUSE CONFINEMENT.

Medical testimony that an insured heart attack victim was essentially free to come and go as he pleased is not determinative of the issue whether he was confined to his premises by an illness under the terms of a health insurance policy where a fair reading of the testimony is that the insured could engage in activity if he felt able to do so, and that he should desist if he experienced fatigue or angina, which is consistent with modern medical treatment of some heart attack cases.

DISSENTING OPINION

COLEMAN, LINDEMER, and RYAN, JJ.

5. APPEAL AND ERROR—FINDINGS OF FACT—BENCH TRIAL.

*An appellant must be able to establish that a finding on an issue tried without a jury was clearly erroneous in order to prevail on appeal from an adverse decision of the trial judge (GCR 1963, 810[2]).*

6. INSURANCE—HEALTH INSURANCE—CONFINING SICKNESS—HOUSE CONFINEMENT.

*An insured is not disqualified for payments under a policy of health insurance which provides for payment if the insured's illness confines him to his premises where he steps out of doors now and then, or occasionally goes to the office of his physician; a flexible, reasonable standard of interpretation of the policy should be used to recognize the entire benefit structure contained in the policy.*

7. INSURANCE—HEALTH INSURANCE—CONFINING SICKNESS—HOUSE CONFINEMENT.

*An insured heart attack victim was not substantially confined to his premises or yard except for necessary visits to a hospital or doctor's office for treatment under the terms of a policy of health insurance where he engaged in certain activities outside*

*his residential premises or yard, his daily activities outside his home blended the conduct of his personal business with incidental therapeutic benefits from his activities, and he was entitled to and did receive benefits for 24 months regardless of the confinement clause rather than totally forfeiting benefits under the policy.*

*White, Spaniola, Knudsen, Stariha & Potuznik, P. C.,* for plaintiff.

*Landman, Hathaway, Latimer, Clink & Robb* (by *William M. Newman)* for defendant.

FITZGERALD, J. The issue on appeal is whether plaintiff suffers from a "confining sickness," as defined by a policy of health and accident insurance issued to him by defendant Federal Life and Casualty Company. The policy was issued to plaintiff in September of 1966 for an annual premium of $201.50. The controversy concerns § 3D of the policy which provides the following coverage:

"Policy section 3

\*     \*     \*

"D. Total Disability—Sickness

| (1) Non-confining or confining sickness | Monthly indemnity $200 | 24 Months for any one Sickness |
|---|---|---|
| (2) Confining Sickness and continued Disability after (D1) | Monthly Indemnity $200 | Lifetime for any one Sickness |

\*     \*     \*

" 'Confining Sickness', means that as a result of Sickness the Insured is confined to his residential premises or yard, except for necessary visits to a hospital or doctor's office for treatment.

" 'Total Disability', means that as a result of Injury or Sickness, the Insured is under the regular care and attendance of a duly licensed doctor of medicine or

osteopathy, other than himself, is completely unable to perform each and every duty pertaining to his occupation and is not gainfully employed in any other occupation, except that if a monthly indemnity has been paid for 12 months during any period of continuous total disability, then for the balance of the period of such continuous total disability, the term total disability in addition shall mean the complete inability of the Insured to engage in any gainful occupation for which he is reasonably qualified by education, training or experience."

In March of 1969, at the age of 47, plaintiff suffered a severe myocardial infarction. As a result of that attack and of the subsequently diagnosed chronic heart disease, plaintiff became disabled from engaging in any gainful employment. Prior to his attack, he had been employed by the Continental Motors Corporation and had, in addition, operated a used-car lot in Muskegon.

He has been diagnosed as suffering from chronic coronary ischemia, which is an insufficiency of the blood supply nourishing the heart. For this reason, he is incapable of more than mild physical activity. He has been told by his treating physician, Dr. Claude VanAndel, D. O., to avoid physical and mental strain, lifting, exposure to inclement weather, and crowds. He was told that mild exercise short of that which produces chest pain or shortness of breath is of therapeutic value.

The evidence indicates that apart from initial and subsequent periods of hospitalization, plaintiff's time is spent around home. His principal exercise and pastime is walking, which he can do for stretches of three or four blocks without pain or shortness of breath. He has been characterized by his physician as an extremely nervous individual, a typical coronary type, one for whom another acute attack is merely a question of time. It ap-

pears that plaintiff's walking exercise has been his
main transition from active employment to the life
of a semi-invalid which he now leads. He walks
about his yard or the neighborhood when the
weather is good. During inclement weather, he
will walk inside his house, from one room to
another or out into a connecting garage. Once or
twice a week he will accompany his wife or
mother to the grocery store or to a shopping
center where he can walk about for a change of
scenery. His walking, which is done in stretches of
three or four blocks, may total as much as two
miles on some days. He also drives on occasion,
although this has been curtailed by his physician
because of the arm motion involved. He estimated
that he might do approximately ten percent of the
family driving around town. For instance, he testi-
fied that he may on occasion pick up his seven-
year-old daughter from the neighborhood school or
that he occasionally drives his mother to the store.

Except for monthly visits to his doctor and
occasional visits to neighbors, the above consti-
tutes the extent of plaintiff's activities outside the
home. During the course of his day, plaintiff takes
the following medication prescribed by his physi-
cian: digitalis, Nitrobid, Coumadin, Bentyl, and
Nitrostat (which is an improved form of nitroglyc-
erin and which plaintiff takes in times of distress).

Following the onset of plaintiff's disability in
March 1969, defendant paid plaintiff the $200
monthly indemnity for two years pursuant to
§ 3D(1) of the policy. Defendant's refusal to pay
continued benefits pursuant to § 3D(2) of the policy
resulted in plaintiff's complaint on October 27,
1971, in Muskegon Circuit Court. It was the opin-
ion of plaintiff's physician that the rigors of trial
might precipitate another coronary. For that rea-

son, and on the stipulation of counsel, a bench
trial was had at which the depositions of plaintiff,
his treating physician, and defendant's medical
expert, Dr. David A. Amos, M. D., were admitted
into evidence. The trial court entered judgment for
the defendant on the ground that, although plain-
tiff had been totally and continuously disabled
within the terms of the policy at issue, he was
disqualified by reason of the confinement clause
for further benefits. The Court of Appeals reversed
at 61 Mich App 377; 232 NW2d 710 (1975), in a
scholarly opinion whose analysis and whose result
we affirm.

Perhaps the best discussion regarding the devel-
opment of case law pertaining to house confine-
ment clauses is found in Anno, *When is one con-
fined to house within meaning of health or acci-
dent insurance policy,* 29 ALR2d 1408, 1412–1413,
wherein it is stated in summary:

> "While there is considerable authority supporting the
> view that 'house confinement' clauses are to be liter-
> ally construed, so as to preclude recovery where the
> insured for any reason, with the possible exception of
> emergencies beyond his control, leaves the house, the
> great majority of cases support the so-called liberal
> construction view.
>
> \* \* \*
>
> "Two quite generally accepted doctrines, with refer-
> ence to the insured's right to recover under a specific
> factual situation, emerge from the cases.
>
> "The first of these is the doctrine that 'house confine-
> ment' clauses are not violated where the insured occa-
> sionally departs from within the four walls of the house
> for the purpose of getting fresh air and exercise, in a
> bona fide attempt to improve his health, particularly
> where such departures are undertaken by the direction
> of a physician, or where he visits his physician's office
> or a hospital for examination and treatment.

"On the other hand, where the insured is able to, and does, leave his house for primarily business or other non-therapeutic records *[sic]* , he can no longer be considered within the scope of a 'house confinement' clause."

A review of recent decisions compiled in the Later Case Service of this collection reveals that most if not all jurisdictions which have recently confronted the issue follow the liberal rule.

In 1A Appleman, Insurance Law and Practice, §§ 652–653 (1976 Pocket Part, pp 134–135), it is stated:

"The term 'continuous confinement' in a disability policy has been considered to describe the nature and extent of the insured's illness, or disability, and not prescribe limitations on the conduct of the insured.

\* \* \*

"But where the insured is able to and does leave his home for primarily business or other personal, as contrasted to therapeutic, reasons, even the more liberal courts generally tend to deny recovery for illness or disability under a policy requiring confinement within house or within doors."

See, also, 15 Couch on Insurance 2d, §§ 53:141–53:148.

Michigan had an early commitment to liberal construction of such confinement clauses. In *Hoffman v Michigan Home & Hospital Ass'n,* 128 Mich 323; 87 NW 265; 54 LRA 746 (1901), the confinement clause, which read "continuously confined to his bed, or continuously confined to the house", was even more restrictive than the clause here at issue. The facts of *Hoffman* reveal that although plaintiff was totally disabled from engaging in his bakery-confectionery business, he was allowed by his physician to leave his residence, which was in

the same building as his bakery, and to travel to Chicago in order to seek a more tranquil convalescence away from his business. Plaintiff Hoffman further testified that he took morning walks during the period of his convalescence in Chicago. Nevertheless, this Court upheld a jury verdict for plaintiff and approved an instruction by the trial court which reads in part as follows:

" 'I charge you, gentlemen, that, to constitute a compliance with this provision, it is not necessary that the plaintiff should remain in the house continuously during the entire time of disability; that to step out of doors now and then, or to occasionally go to the office of his physician, would not be a violation of this clause, or defeat plaintiff's right of recovery. It may be that an occasional airing is essential to a speedy recovery. A rule which would make nugatory a contract having for its special object indemnity on account of sickness, because the insured took an occasional and necessary airing, would be unreasonable. Was the plaintiff sick, and with a disease covered by his policy, to the extent that he was totally disabled from prosecuting any business? and was he continuously confined to his house on account of such sickness, to the extent that he was necessarily and in good faith there the larger portion of his time, and only went forth either from necessity for consultation with, or by direction of, the physician in whose charge and care he was? An answer to this question will determine this branch of the case.' " 128 Mich at 327–328.

However, as was noted by the Court of Appeals, Michigan precedent on point became less than clear when *Hoffman* was distinguished in *Shirts v Phoenix Accident & Sick Benefit Ass'n,* 135 Mich 439; 97 NW 966 (1904), and *Cooper v Phoenix Accident & Sick Benefit Ass'n,* 141 Mich 478; 104 NW 734 (1905).

We are of the opinion that, if there has been an apparent retreat from the liberal approach of *Hoffman,* the time has come for us to reaffirm the basic soundness of that case. The principal purpose for which one insures against sickness and accident is to provide indemnity for the period of inability to engage in gainful employment. In such cases, technical construction of policy language which would defeat a reasonable expectation of coverage is not favored. *Ebert v Prudential Ins Co of America,* 338 Mich 320, 325; 61 NW2d 164 (1953). Here, even a literal reading of the policy does not require that plaintiff remain within the four walls of his home. And, if the insured could with impunity take his prescribed walks in his yard, the fact that he can and does engage in the same quantum of activity outside the confines of his yard should not disqualify him from benefits. Especially is this the case where, as here, the insured is required by the policy terms to be under a physician's regular care and the physician prescribes the complained-of activity for its therapeutic value.

We agree with the Court of Appeals that medical testimony to the effect that plaintiff was essentially free to come and go as he pleased is not determinative of the issue. A fair reading of that testimony is that plaintiff could engage in activity if he felt able to do so, and that he should desist if he experienced fatigue or angina. Such testimony is consistent with modern medical treatment of such heart cases—which is essentially to let the patient pace himself. Furthermore, defendant's contention on appeal that the extent of plaintiff's activities should disqualify him from benefits becomes even less convincing in light of defendant's contention below that plaintiff could and should

increase the level of his activities by increasing his reliance on nitroglycerin.

The extent of plaintiff's activities is approximately that of the plaintiffs in the following cases: *Cassady v United Ins Co of America,* 370 F Supp 388 (WD Ark, 1974); *Guarantee Trust Life Ins Co v Patterson,* 56 Tenn App 301; 406 SW2d 338 (1966); *Manuel v American Income Life Ins Co,* 254 La 316; 223 So 2d 817 (1969); *Occidental Life Ins Co of California v Vervack,* 244 Ark 1231; 429 SW2d 116 (1968); and *Tyler v United Ins Co of America,* 243 SC 114; 132 SE2d 269 (1963). In each of the above cases, the insured was wholly disabled by heart disease. In each case the treating physician, in conformity with modern medical practice, had prescribed mild, nonproductive activity such as walking to prevent further bodily decline or to relieve anxiety incident to the change in life pattern. In each case, the reviewing courts examined the totality of activity involved, found that the excursions were not for business or personal purposes, and held that the claimants were substantially confined. Such is the case at bar.

The Court of Appeals is affirmed, with costs to plaintiff.

KAVANAGH, C. J., and WILLIAMS and LEVIN, JJ., concurred with FITZGERALD, J.

LINDEMER, J. *(dissenting.)* I must dissent because I believe the trial judge was justified in concluding that plaintiff was not suffering from a "confining sickness" as defined in the insurance contract.

In order for this plaintiff to prevail on appeal from the adverse decision of the trial judge, he must be able to establish that the decision below was clearly erroneous. GCR 1963, 810(2). *Kevreson v Michigan Consolidated Gas Co,* 374 Mich 465;

132 NW2d 622 (1965). I do not believe the record permits such a finding by an appellate court.

Plaintiff testified that he was advised by his attending physician to engage in "a small amount of exercise, what I felt like I could do—no lifting, no strenuous work, and try to stay out of the terrific heat and excitement and cold".

Plaintiff admitted that he had engaged in certain activities outside of his "residential premises or yard". Those activities included accompanying his wife to a department store, exercising the family's Boston Bull Terrier, and occasionally driving the car in order to pick up his daughter from school or take his mother shopping. Plaintiff also admitted once attending a funeral for a relative and on another occasion attending a hockey game. Plaintiff explained that he found both of these activities too stressful and had resolved not to attend similar functions in the future. Plaintiff admitted that he owned and occasionally operated a self-contained motor home and that he once took it to Hesperia, Michigan for an overnight trip.

In addition to plaintiff's own testimony, the trial judge had the testimony of two physicians on which to rely. Both physicians agreed that plaintiff is substantially free to come and go as he pleases, subject to avoiding harsh weather conditions and particularly stressful situations. Plaintiff's own doctor did not believe that Mr. Crowell was suffering from a "confining sickness". Defendant's expert witness reached the same conclusion. He testified that there was no apparent reason why plaintiff must necessarily limit himself to activities in his home or yard or other ventures of a strictly therapeutic nature.

It is evident from the record that plaintiff engaged in activities not literally permitted by the

insurance contract. It is equally evident that plaintiff was encouraged by his physician to engage in these activities. Plaintiff argues, however, that prior case law indicates that his contract must be liberally construed to allow him to occasionally escape the confines of his house or yard for other than the stated exceptions.

In *Hoffman v Michigan Home & Hospital Ass'n,* 128 Mich 323; 87 NW 265 (1901), the Court found that a strict house confinement clause should be interpreted to allow the insured to "step out of doors now and then, or to occasionally go to the office of his physician". The Court agreed that "an occasional airing is essential to a speedy recovery" and "[a] rule which would make nugatory a contract having for its special object indemnity on account of sickness, because the insured took an occasional and necessary airing, would be unreasonable".

The reasons for application of the "substantial confinement doctrine" to situations involving strict confinement clauses which would completely deny recovery are obvious. Defendant does not suggest that the Court must interpret this contract language literally but suggests that a "flexible, reasonable standard should be used * * * giving recognition to the entire benefit structure contained in the policy". While I agree that the rule of contract interpretation from the *Hoffman* case is applicable to this case, the facts of the *Hoffman* case are quite different from the facts of this case. In *Hoffman,* the contract required defendant to be totally disabled and continuously confined to either his bed or to the house. In the instant case, the plaintiff is permitted to make unlimited use of his yard and necessary visits to health facilities. And unlike the total forfeiture of benefits in the

*Hoffman* case, plaintiff in this case was entitled to and did receive benefits for 24 months regardless of the confinement clause.

The majority would deny relief if the excursions were primarily for business or personal reasons, but would grant relief for nonproductive activities that have therapeutic value. The problem with this approach is that most of plaintiff's daily activities outside his home blended the conduct of personal business with therapeutic benefits.

The thrust of the majority opinion is to redraft the definition of the confining sickness clause to allow unlimited nonproductive excursions having some therapeutic value. It is obvious that a person in plaintiff's condition must derive some incidental therapeutic benefit from the activities plaintiff engaged in. However, these incidental benefits cannot justify the otherwise personal nature of the activities outside of his home that plaintiff was able to accomplish on a nearly routine basis.

In rendering his decision the trial judge said:

"The history of the court's definition of confining illness has been to enlarge its meaning over the years, to allow visits to the doctors' offices and to the hospital without violating the terms of the confining illness clauses. In effect, in this case the court is asked to enlarge upon those holdings to say that practically anything that has therapeutic value can be allowed without violating the confining illness clauses.

"It is obvious that it is beneficial to the well-being of this plaintiff that he be allowed to take such ventures away from the home and premises as are consistent with the stresses that he can tolerate comfortably. However, the court is of the opinion that I may not enlarge upon the terms of the written agreement between the parties so as to render meaningless the contractual definition placed upon confining illness."

The record establishes that plaintiff was not substantially confined to his premises or yard except for necessary visits to a hospital or doctor's office for treatment.

I would reverse the Court of Appeals and affirm the decision of the trial court.

Coleman and Ryan, JJ., concurred with Lindemer, J.