### 18107

Hubert G. TYLER, Respondent, v. UNITED INSURANCE COMPANY OF AMERICA, Appellant

(132 S. E. (2d) 269)

*Messrs. Burroughs & Green,* of Conway, *for Appellant,*

*Ralph Hoffman, Esq.,* of Conway, *for Respondent,*

August 12, 1963.

BRAILSFORD, Justice.

The sole question on this appeal is whether the evidence, in the light most favorable to plaintiff, is sufficient to sustain his recovery of disability benefits under the insuring agreement and part eleven of the accident and sickness insurance contract purchased from the defendant. The insuring agreement as to sickness is that the company "does hereby insure the person named in the policy * * * against * * * loss of time * * * from sickness originating more than thirty days after the policy date * * *." Part eleven reads as follows:

"CONFINING TOTAL DISABILITY BENEFITS FOR LIFE—If 'such sickness' causes continuous total dis-

ability and total loss of time, and requires continuous confinement within doors and regular and personal attendance therein by a licensed physician, surgeon, osteopath or chiropractor, other than the Insured, the Company will pay at the rate of the Monthly Benefit stated in the Policy Schedule for one day or more from the first medical treatment so long as the Insured lives and is so disabled and confined."

Part twelve of the policy provides for non-confining total disability benefits, not exceeding three months for any one sickness.

The policy was issued January 19, 1960, and was in force on December 21, 1960, when insured was stricken with a serious heart disease, which, concededly, has resulted in continuous total disability and total loss of time. The insurance company, apparently, paid monthly benefits of Two Hundred ($200.00) Dollars for a period of five months, and then discontinued payment upon the ground that insured's sickness was not confining and that its obligation under part twelve to pay non-confining total disability benefits had been discharged. This action was commenced by the insured in December, 1961, to recover monthly benefits from May 18, 1961, to November 18, 1961. The only issue tendered by defendant's answer and by its motion for a directed verdict has already been stated. It was resolved against defendant by the jury and this appeal followed.

House confinement disability clauses, similar to the one involved here, have been included in insurance policies for many years and have been construed in numerous cases. While there is authority for the view that such clauses are to be literally construed, so as to preclude recovery where the insured, for any reason, is not continuously confined indoors, "the great majority of cases supports the so-called liberal construction view, holding that while the house confinement clause must be complied with, it need not be literally complied with in order to entitle the insured to indemnity. In this respect, the various views have been expressed that substantial confinement by reason of illness or accident con-

stitutes a sufficient compliance with 'house confinement' provisions; that 'house confinement' clauses are intended to describe the required extent of the insured's illness or other disability, rather than to impose a strict limitation upon his conduct; that 'confinement' is equivalent to inability to work, and that house confinement is merely an evidentiary requirement, designed to show with certainty the insured's total disability.

\* \* \*

"According to the courts which have adopted the liberal construction doctrine regarding 'house confinement' clauses, a person may be totally incapacitated and confined to his house within the meaning of a policy although he takes some exercise outdoors or visits his physician, provided he is entirely incapacitated for work or business on account of his injury or illness \* \* \*. But even under a liberal construction of the house confinement provision, where the insured is able to, and does, leave his house for primarily business or other personal, as contrasted with therapeutic, reasons, it has generally been held that he is thereby precluded from recovering benefits for house-confining illness or accident." 29A Am. Jur. 637, 638, 639.

We followed the liberal construction view in *Shealy v. United Insurance Company of America,* 239 S. C. 71, 121 S. E. (2d) 345, and sustained recovery under the identical policy provision involved here. The court summarized the evidence bearing on this issue as follows:

"The evidence is to the effect that the respondent is a man sixty-one years of age, living alone, and who, as a general rule, during the period of time involved in this cause of action, went to his doctor's office weekly and drove his car there as he couldn't walk, and had no one else to drive. He testified that he could only drive a short distance, and that his car had automatic transmission. He also stated that on occasions the doctor came to his house; that on occasions he went to the doctor's office and went to see his neighbors and to the store nearby to get supplies or medi-

cines; that some weeks he didn't get out of the house except to go to the doctor's office; that he went to Columbia, South Carolina, on two occasions solely to see Dr. McCutchen and had someone else drive him there; that when he went out of the house it was necessary for him to go; that he is unable to do his household chores and has a Negro boy to attend to this for his. * * *" 239 S. C. 74, 75, 121 S. E. (2d) 346.

The result in *Shealy* was foreshadowed in *Peace v. Southern Life & Trust Co.,* 171 S. C. 102, 171 S. E. 475, where the court in construing a bed confinement clause favorably to insured, made the following comment on the construction usually given by the courts to house confinement clauses:

"* * * There are numerous cases in which the words 'confined to the house' or 'confined within the house,' have been construed by the courts; and in these cases it is generally held that such clauses should be given reasonable construction and that recovery may be had where there is a 'substantial confinement to the house,' although 'the insured may go out of the house to get air or sunshine or to see his physician, or for some other necessary purpose.'" 171 S. E. 475.

In our view, the evidence in this case is strikingly similar to that in *Shealy.* Plaintiff testified that after becoming ill in December, 1960, he was confined to a hospital from January 2-14, 1961, and again in March, 1961. Since then, he has been "almost totally confined" to the house, but does get out some, "just for a little just to stir about some for circulation." He also goes "to the hospital and to the doctor's office and for checkups and things." On direct examination, he summarized his daily activity as follows:

"As a usual thing I get up around seven to eight. I have breakfast which I am on a low calorie diet. I eat breakfast and I have a round of medicine to take. If the weather permits, if it's not too cold or hot, I get out and maybe walk some in the yard, maybe take some exercise walking, and I read some. Papers or different things and then maybe have

dinner around twelve and lunch and more medicine and I go to bed for a rest period for some two to three hours and then I get up and mess about the house, watch TV or read a little unless I have to go visit the doctor or sometime I will visit a neighbor if I am feeling well enough. That's what I usually do."

Elsewhere in his testimony, plaintiff stated that he visited a neighbor occasionally, not often.

One of two medical witnesses testified that plaintiff has "heart disease of the type that causes pain in the chest on exertion * * *, not occurring in rest usually." Pain is produced by relatively light exertion, such as "walking at a normal pace for two blocks * * *." On cross-examination, this witness testified that plaintiff's disability was total but was not "such that he had to be confined to the house." The witness thought that continuous confinement would aggravate plaintiff's condition and that some exercise and sunshine was good for him.

The other medical witness is plaintiff's regular physician. He has seen plaintiff regularly since December of 1960 and plaintiff undergoes certain tests at the hospital every two weeks. Plaintiff comes to his office for examination and treatment. Plaintiff showed some improvement after the original attack but suffered another acute attack in January, 1962, and his condition has been essentially the same since.

"Q. To what degree, doctor, is he disabled physically?

"A. I know Mr. Tyler very well and in my opinion he is physically unable to go into the strain and stress of any physical or manual work.

\* \* \*

"Q. Would you prescribe fresh air and sunshine or what other medicines?

"A. I think one of the most important things is bedrest. Lying down for two or three hours in the day. Another is walking. A small amount of exercise. Those are the two most important things he can do and diet is another. At

that we don't know yet for sure, but we think diet is one of the most important things.

"Q. Diet and some exercise?

"A. Yes, sir.

Cross-examination:

"Q. So far as your prescribing a course of conduct and taking care of himself, so long as he takes exercise, watches his diet and gets one to two hours rest in the middle of the day, that is as confined as he would be in looking after himself? Is that correct?

"A. That's about all he can do.

"Q. It is possible for him—first, there is no question but what he is totally disabled and we have not argued about that.

\* \* \*

"A. That's right.

"Q. But you don't tell him to confine himself within doors?

"A. No, I think that would be very bad for him."

The testimony of the medical witnesses that plaintiff's disability did not make it necessary for him to be confined within doors is not conclusive. Such testimony may well be related to literal, continuous confinement, not taking into account allowable excursions outdoors for therapeutic exercise and exposure or for other limited purposes.

"It has been held or stated in the great majority of cases, either expressly or impliedly, that as long as the insured is unable to work, or is disabled from pursuing his own occupation (depending on the wording of the policy), occasional departures from within the four walls of the house to get fresh air and exercise, in a bona fide attempt to improve his physical and/or mental condition, and/or visits to a physician's office or to a hopsital for examination and treatment, do not preclude him from recovering the benefits provided under 'house confinement' clauses." Annotation, 29 A. L. R. (2d) 1408, 1428.

The above principle is supported by our decision in *Shealy, supra.* Whether plaintiff's disability is substantially confining was properly submitted to the jury.

Affirmed.

TAYLOR, C. J., and MOSS, LEWIS and BUSSEY, JJ., concur.