## 19065

Hoyt Quincy PRICE, Respondent, v. UNITED INSURANCE
COMPANY OF AMERICA, Appellant

(175 S. E. (2d) 221)

*Messrs. Levi & Wittenberg,* of Sumter, *for Appellant,*

*Carl R. Grant, Esq.,* of Lexington, *for Respondent,* cites:

June 11, 1970.

LITTLEJOHN, Justice.

This action was commenced to obtain disability income benefits of $35 per week for thirty weeks of each year, commencing September 22, 1964 and through September 22, 1968, alleged to be due by reason of a policy of insurance issued by the defendant in 1958. It is the contention of the plaintiff that he is totally disabled by reason of heart disease and that his claim comes within the terms and conditions of the policy.

The defendant, by answer, in addition to a general denial, alleges that plaintiff is not disabled within the meaning of the policy and is not entitled to benefits.

The case was tried before a jury, resulting in a verdict for the plaintiff. The defendant appeals and asserts, among other things, that the trial judge should have directed a verdict on the ground, in substance, that the only reasonable inference to be drawn from the whole of the testimony is that as a matter of law the plaintiff has not proved that he has been continuously confined inside the house under the regular attendance of a physician as contemplated by the terms of the policy.

The policy admittedly in force insures the plaintiff:

"(a) gainst loss of life, limb, sight or time, resulting * * * through accidental bodily injury, * * * and against loss of time on account of sickness contracted during the term of the policy, hereinafter referred to as 'Such Sickness,' subject, however, to all the provisions, conditions and limitations hereinafter contained.

"The Company will pay, * * * if the Insured suffers 'Such Sickness' which shall wholly and continuously disable the Insured so as to prevent him from performing every duty pertaining to his occupation and cause him to be confined inside the house under the regular care and attendance of a legally qualified physician or surgeon, during the period of such disability. * * *

"The term 'confined inside the house' is hereby defined as confinement of the Insured continuously inside the house because of 'Such Sickness,' except that the right of the Insured to recover under the policy shall not be defeated because he visits his physician for treatment or goes to a hospital for treatment when such treatment cannot be administered in the Insured's home."

We must determine whether the evidence supports the inference that the plaintiff's disability caused him to be confined inside the house under the regular care and attendance

of a physician. The confinement inside the house, according to the terms of the policy itself, means "continuously inside the house because of 'Such Sickness.' " In order to make this determination we must review the whole of the testimony, keeping in mind that it must be viewed in the light most favorable to the plaintiff.

Plaintiff is 58 years of age and was, prior to his heart attack in January 1961, an operator of a bulldozer. Previously he had been a city bus driver. After his heart attack he was attended by Dr. Ross; about two years later when Dr. Ross ceased to practice, Dr. Edward Bradley became his physician.

Since his heart attack in 1961 he has performed no work of any kind nor has he attempted to obtain employment. His wife is employed. Defendant paid plaintiff from the time of his heart attack in 1961 until September 22, 1964. At that time payments were discontinued on the ground that plaintiff was no longer entitled to benefits under the terms of the policy.

According to his testimony he sits around the house reading and looking at TV. However, he admits that he goes to church almost every Sunday and stays about two hours. He goes to the doctor's office and drives his wife's automobile. He fixes his own lunch and helps his wife with the cooking, does some fishing, and goes to the barber shop to get his hair cut. He testified that he goes to town to buy his suits.

According to his physician, Dr. Bradley, he has since 1963 never been confined to the house and nothing from a medical standpoint prevents him from leaving the house except when he actually has chest pains. The doctor said he could participate in activity which does not require over-exertion, and can leave the house to do anything that does not over-exert him. He said that he had never reported him as being confined to the house. Weekly reports have been signed by the doctor but the nature of the certificates signed are not shown in the record. He stated that he had allowed plaintiff to leave his home for any reason he wants to, personal or business.

The plaintiff could not remember the number of visits to the doctor's office, but Dr. Bradley testified from his records that he had seen this patient two times during the policy year of September 22, 1964 and September 22, 1965. In February 1965 the doctor said "I found nothing that I thought was of any great significance in changes of his condition." In June 1965 the doctor washed out plaintiff's ears.

During the second policy year of September 22, 1965 and September 22, 1966 plaintiff was seen twice. In October 1965 he was treated for dizziness, and in September 1966 he was treated for a heavy beating of the heart which could not be documented.

During the third policy year of September 22, 1966 and September 22, 1967 he did not see the doctor.

During the fourth policy year involved in this action, from September 22, 1967 to September 22, 1968 he made one visit to the doctor. The doctor did an EKG to check his condition and found no changes. Again he removed wax from plaintiff's ears. In May 1968 he was in the hospital three days because of a neck ailment. The doctor also saw him in July 1968 for nervousness.

The defendant's doctor (Fishburne) saw the plaintiff in December 1964 and in November 1968, just before the trial. He verified a heart and circulatory system ailment and agreed that activity should be limited, but was of the opinion that plaintiff was not permanently or totally disabled from work other than manual labor.

We are convinced that the only reasonable inference to be drawn from the whole of the evidence is that the plaintiff has not been continuously "confined inside the house" within the meaning of the policy, during the period involved in this action.

In his charge the trial judge correctly told the jury "but where an insured is able to and does leave his house for primarily business reasons or other personal reasons, he cannot recover benefits under this type of provision."

This court in *Tyler v. United Insurance Company of America,* 243 S. C. 114, 132 S. E. (2d) 269 (1963), cited 29A Am. Jur. Insurance § 1530 (1960), with approval, as follows:

"But even under a liberal construction of the house confinement provision, where the insured is able to, and does, leave his house for primarily business or other personal, as contrasted with therapeutic, reasons, it has generally been held that he is thereby precluded from recovering benefits for house-confining illness or accident."

We are also of the opinion that the medical attention sought by the plaintiff and rendered by his physician as enumerated above, did not as a matter of law meet the requirement of the contract which required that the plaintiff be "under the regular care and attendance of a legally qualified physician * * *" before payments would be made.

The motion for a directed verdict should have been granted and the case is remanded for entry of a judgment under Rule 27.

Reversed.

Moss, C. J., and LEWIS, BUSSEY and BRAILSFORD, JJ., concur.