20284

Walter Daniel MARTIN, Respondent, v. PILOT LIFE INSURANCE COMPANY, Appellant.

(228 S. E. (2d) 550)

*C. W. Derrick, Esq.,* of *Derrick and Derrick,* Marion, *for Appellant,*

*William H. Seals, Esq.,* of Marion, *for Respondent,* 

Sept. 22, 1976.

LEWIS, Chief Justice.

This action involves the right of respondent-insured to recover benefits under a disability insurance policy issued by appellant. The policy provides for the payment of $300.-00 per month for disability resulting from sickness,

If such a sickness shall, . . . wholly and continuously disable the insured and prevent him from performing all of the duties pertaining to his occupation, . . . for as long as the insured shall live and be so disabled and necessarily and continuously confined within the house.

Upon the trial of the case, appellant offered no testimony but moved for a nonsuit and directed verdict in its favor upon the ground that the evidence presented by respondent failed, as a matter of law, to show total disability which necessarily and continuously confined respondent within the house, as required by the quoted policy provisions. These motions were denied and the issues were presented to the jury. The jury returned a verdict for respondent, finding that he was disabled within the meaning of the policy. The amount due respondent, if appellant is liable, is not in dispute.

The first issue presented is whether there was any evidence to support the jury's findings that the respondent was "wholly and continuously" disabled and "necessarily and continuously confined within the house." In determining this issue, we are required to view the evidence and the reasonable inferences to be drawn therefrom in the light most favorable to the respondent.

The testimony shows that respondent is a sixty-one year old physician and purchased the above mentioned disability policy from appellant in May 1957. In 1971 he collapsed at work and was immediately admitted to the hospital suffering from a heart attack. Examination showed that the pericardium (a membrane or sac which surrounds the heart) had become inflamed and surgery was performed to remove the pericardium in order to prevent death. During convalescence, respondent developed phlebitis in his legs.

Respondent was considered totally disabled and appellant paid the monthly benefits provided by the policy until August 1974, at which time payments were discontinued on the ground that respondent was no longer totally disabled and confined within the house.

The medical testimony shows that respondent at all times since the heart attack in 1971 has been suffering from chronic congestive heart failure, chronic bronchitis, and a chronic phlebitic leg. The testimony of two physicians that respondent is totally disabled and unable to perform the duties of his profession as a physician created a factual issue for the jury on the question of total disability.

The question of whether respondent is "necessarily and continuously confined within the house" presents a more difficult issue. The testimony shows that respondent does leave his house almost daily. He goes to the bank and post office. He plays golf as much as three times a week by using a golf cart to move about the course. He occasionally does light grocery shopping and goes to the store to buy his clothing. He also drives his car which has power steering and power brakes. Appellant contends that these activities show that respondent is not "necessarily and continuously confined within the house" as required by the policy. The respondent argues, however, that the trips away from the house are made only for therapeutic reasons on the advice of his physicians and that he has substantially

complied with the terms of the policy, which is all that is required.

If the phrase "necessarily and continuously confined within the house" is applied literally, respondent is obviously not so confined. However, this Court has refused to interpret literally similar language in two prior decisions. *Shealy v. United Insurance Company of America*, 239 S. C. 71, 121 S. E. (2d) 345; *Tyler v. United Insurance Company of America*, 243 S. C. 114, 132 S. E. (2d) 269. The policy provisions in each of those cases required "continuous confinement within doors."

In *Shealy*, recovery was sustained where the insured drove his car to the doctor's office weekly, went to see his neighbors and to the store nearby to get supplies or medicine. The evidence sustained the conclusion that the insured was totally disabled. The court, in construing a clause requiring "continuous confinement within doors," stated: . . . generally literal compliance with such requirements in an insurance policy is not a pre-requisite to recovery. We think the purpose of the provision relative to the insured's being continuously confined within doors was to describe the character and extent of his illness rather than to prescribe a limitation upon his conduct.

The court, in *Shealy*, cited with approval the majority view that the right of the insured to recover under a policy provision requiring continuous confinement within doors is not defeated by the fact "that he visits his physician for treatment, or goes out on the physician's advice for fresh air or sunshine or exercise, or goes to a hospital or to a different climate for his treatment, or goes out occasionally for other purposes, provided he is entirely incapacitated for work or business on account of his illness."

*Tyler* also involved a policy clause requiring "continuous confinement within doors." The court sustained recovery upon similar facts to those in *Shealy*, holding that such policy provisions should be given a reasonable construction

and that an insured may recover where there has been a substantial confinement to the house, although the insured may go out of the house to get fresh air and exercise in a bona fide attempt to improve his physical or mental condition or to see his physician or "for such other necessary purpose."

However, these decisions point out that departure from the house for "primarily business or other personal, as contrasted with therapeutic reasons," precludes recovery under such policy provisions.

Our decisions therefore hold that a policy provision requiring continuous confinement within doors is intended to describe the character and extent of the insured's illness and that the provision will be construed and applied with a view to such purpose.

The present policy provision differs from those considered in *Shealy* and *Tyler* in that the word "necessarily" is included, so that the insured here is denied recovery unless the sickness wholly and continuously disables him and he is "necessarily and continuously confined within the house."

We do not think that the use of the word "necessarily" with continuous confinement within the house renders the principles adopted in *Shealy* and *Tyler* inapplicable.

In *Peace v. Southern Life & Trust Company,* 171 S. C. 102, 171 S. E. 475, the policy provision required that the insured be "necessarily confined to bed." The court construed the provision to mean bedridden in a substantial sense and refused to construe the requirement, that insured be *necessarily* confined, as requiring that he remain in bed at all times. The court in *Peace* cited and adopted the liberal rule in house confinement cases, the substantial compliance met the requirements of such policy provisions.

If the use of the word, *continuously* is not to be given a literal interpretation so as to require constant confinement within the house, as we have held in *Shealy* and *Tyler,* no

reason appears, and none is suggested, to require that the use of the word *necessarily* would call for a more literal application of the language used.

■ The trial judge, in accordance with the foregoing principles and without exception being taken, instructed the jury, relative to continuous confinement within the house, that "as long as the insured is unable to work, or is disabled from pursuing his own occupation, occasional departure from within the four walls of the house to get fresh air and exercise in a bona fide, . . . , attempt to improve his physical and/or mental condition, and/or visits to physicians' offices, or to a hospital for examination and treatment, do not preclude him from recovering the benefits provided under house confinement clauses"; but that "where the insured is able to, and does, leave his house for primarily business or other personal, as contrasted with therapeutic reasons, he is thereby precluded from recovering benefits for house confining illness."

The record shows that respondent is in extremely poor health though not entirely bedridden. The medical testimony is that exercise is essential for respondent in order to maintain the strength of the heart and to prevent a recurrence of phlebitis. The short absences from the house are primarily to maintain the degree of exercise recommended by the doctor.

Respondent has a practical nurse who daily attends both him and his wife. He is unable to undertake any strenuous activity and exercises only to the extent of his tolerance, as directed by his physician. When he plays golf he must rest between holes even though he rides in a cart. The limited driving of his car and playing golf both provide the exercise prescribed by his physicians and considered necessary to sustain life. In fact, the doctors testified that respondent must have some limited exercise or risk death.

The jury was required, under the unchallenged instructions, to decide whether the limited departures by respondent from the home were for primarily business or personal

reasons, or whether they were for therapeutic reasons. The testimony that, when respondent left his home it was solely in accordance with his physicians' instructions and that this limited activity was essential to life, created a factual issue under the house confinement clause of the policy, and was properly submitted to the jury for determination.

The case of *Price v. United Insurance Company of America,* 254 S. C. 301, 175 S. E. (2d) 221, cited by appellant, involved different facts and is not controlling here. In that case, the insured had not been under the regular care and attendance of a legally qualified physician, as required, and had never been confined to the house.

The trial judge accordingly properly denied appellant's motions for nonsuit and directed verdict.

The remaining question for decision concerns the refusal of the trial judge to grant a mistrial because of alleged prejudicial argument of respondent's counsel to the jury. Respondent's counsel stated in argument to the jury: "The insurance company wants Dr. Martin to be a vegetable before they pay" and "The insurance company wants Dr. Martin to lie flat on his back before they pay." Objection was interposed to these statements together with a motion for a mistrial. The trial judge instructed the jury to disregard the statements, but refused to order a mistrial. Appellant contends that the quoted remarks were so highly inflammatory and prejudicial that a mistrial should have been granted.

Under these facts, the granting or denial of the motion for a mistrial was discretionary; and there is no showing of an abuse of that discretion. *Young v. Warr,* 252 S. C. 179, 165 S. E. (2d) 797.

The judgment is accordingly affirmed.

LITTLEJOHN, NESS, RHODES and GREGORY, JJ., concur.