## 20772

J. T. BROWN, Appellant, v. ALL AMERICAN LIFE & CASUALTY COMPANY, Respondent.

(247 S. E. (2d) 812)

*Richard G. Dusenbury, K. Alex Bosserman, Jr.,* and *Bernard D. Dusenbury,* Florence, *for appellant.*

*Willcox, Hardee, Palmer, O'Farrell, McLeod & Buyck,* Florence, *for respondent.*

October 3, 1978.

LEWIS, Chief Justice:

This action for fraud and deceit arose out of the procurement of a release from appellant in settlement of appellant's claim for disability benefits under a policy of insurance issued by respondent.

In 1969, respondent insurance company issued to appellant an income protection policy which provided monthly benefits in the event appellant became disabled. Total disability payments were to be paid after twenty-four (24) months of total disability only as long as the insured was confined to either a hospital "or to the home in which he resides." In 1972, appellant suffered a massive heart attack, resulting in his total and permanent disability; and respondent paid to appellant disability benefits under the policy for twenty-four (24) months.

On September 19, 1974, eight days prior to the second anniversary of appellant's disability, respondent informed appellant by letter that all benefits due under the policy had been paid. After unsuccessful efforts to find out his rights to further disability benefits under the policy and pursuant to statements to him by an agent of respondent, appellant accepted a settlement payment of $9,600.00 from respondent and signed a release.

This action was subsequently brought by appellant to recover damages, both actual and punitive, for alleged fraud and deceit on the part of respondent's agent in inducing him to sign the above mentioned release. Upon the trial of the case, the trial judge granted respondent's motion for a nonsuit; and this appeal followed.

The question to be decided is whether there was any evidence to sustain the allegations of fraud and deceit in the procurement of the release, so as to require the submission of those issues to the jury for determination. For, if there was any evidence to support the charges of fraud and deceit, the order of nonsuit must be reversed and the cause remanded for a new trial.

Viewing the evidence in the light most favorable to appellant, as we are required to do, we think the testimony presented jury issues and the trial judge was in error in granting a nonsuit.

Appellant was engaged in the trucking business, operating several truck tractors, at the time of his heart attack. The heart attack was a massive one and rendered appellant totally and permanently disabled. While there is testimony that appellant was not constantly confined to his home, it is clearly inferable that his departures from his home were not such as to deprive him, as a matter of law, of recovery of total and permanent disability benefits under the policy. *Martin v. Pilot Life Insurance Co.,* 267 S. C. 388, 228 S. E. (2d) 550.

While appellant was totally and permanently disabled, respondent wrote appellant the above mentioned letter advising him that he was entitled to no further disability benefits under the policy unless he was "able to resume the full and complete duties of your occupation for six consecutive months or in the event of future confinement." Appellant testified that the receipt of this letter disturbed him greatly because he was depending upon his policy to send his daughter to school. He immediately called the home office of respondent in Chicago to find out about the matter and pro-

tested the termination of his disability benefits. He received no satisfaction from this telephone call and then contacted respondent's local agent with like results. While he was not physically able to make the trip, his wife placed a mattress in his station wagon and carried him to Columbia where he conferred with a representative of the State Insurance Commission. The representative of the Insurance Department could not help him and he returned to his home in Florence between three and four o'clock in the afternoon.

Appellant had taken medication during the day and after he returned home, and was exhausted from the trip. Shortly after his return home, appellant was visited by one of respondent's agents from the home office. This visit was about 7:30 at night and the agent indicated that he was sent to explain the policy. While there, the agent stated to appellant that the statements in the letter previously received from the company were correct; that appellant was not entitled to additional benefits because he was not confined to bed at home; that appellant could not leave his house, except to see a doctor, without violating the policy conditions relative to payment of disability benefits; that appellant was not entitled to any further benefits at that time; and that the policy was not worth a dime, but he would take a chance and make some payment. When appellant indicated that he would like to consider the offer overnight and consult a lawyer, respondent's agent replied that whatever settlement was made would have to be closed that night. The agent thereupon opened the door, as if to leave, and stated that the offer was withdrawn when he walked out of the door. After some further conversation, the agent wrote the check for the settlement and appellant signed the release.

Accepting appellant's testimony as true, the elements of actual fraud were sufficiently established to require submission of the issues to the jury. *Koon v. Pioneer-Pyramid Life Ins. Co.,* 175 S. C. 117, 178 S. E. 503; *Rhame v. Pacific Mutual Life Insurance Co. of California,* 179 S. C. 297, 184 S. E. 685.

Appellant's physical condition was known to respondent and it is inferable that respondent's agent was informed of the conditions surrounding appellant's house confinement. It is further inferable that respondent's agent went to appellant's home for the purpose of securing a release of liability under the policy, and secured the release by taking advantage of appellant's extremely poor physical and financial condition.

When the agent told appellant that he was no longer covered under the policy and was entitled to no benefits at that time, he made a statement that was both material and false. It is clearly inferable that the agent knew of its falsity and intended that appellant act upon the statement. Appellant was ignorant of the falsity of the statement and had been making efforts to ascertain his rights under the policy. Under the foregoing circumstances, appellant had a right to rely on the truth of the agent's representations.

The present issues are properly considered in the light of the following provisions of Section 38-55-70 of the 1976 Code of Laws, which required respondent's agent to speak the truth as to the terms and coverage of the policy:

No person shall, in connection with adjusting any claim, loss, or damage under a contract or policy of insurance, misrepresent to an insured, or any other person having an interest in the proceeds payable under such contract or policy, the terms, coverage or effect of such contract or policy, for the purpose and with the intent of effecting settlement of such claim, loss or damage under such contract or policy on less favorable terms than those provided in and contemplated by such contract policy.

Judgment is reversed and the cause remanded for a new trial.

LITTLEJOHN, NESS, RHODES and GREGORY, JJ., concur.